IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CARL LEEPER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No.: 3:16-cv-00250 |
| v. | ) ) | |
| ALLIANCE RESOURCE PARTNERS, L.P., HAMILTON COUNTY COAL, LLC, and DOE DEFENDANTS 1-20, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Carl Leeper, individually, and on behalf of all others similarly situated, brings this putative class action against Defendants Alliance Resource Partners, L.P., Hamilton County Coal, LLC, and Doe Defendants 1-20 (collectively referred to herein as "Defendants"), and states as follows:

**NATURE OF THE ACTION**

1. This action arises out of Defendants' failure to provide 60-day advanced notice of the termination of nearly 200 employees as part of a mass layoff that occurred at its Hamilton County Coal Mine #1 on February 5, 2016, in violation of the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101 *et seq.*

2. Rather than provide the required advance notice to Plaintiff, a full-time employee at the Hamilton County Coal Mine #1 for three years, and the nearly 200 other putative class members, Defendants provided less than 24-hour notice that it was terminating their employment and that all benefits would cease as of the date of termination.

3. Defendants' mass layoff deprived hundreds of fired "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a).

4. Plaintiff brings this putative class action against Defendants seeking, *inter alia*, back pay, benefits, and attorneys' fees as provided for under the WARN Act.

## THE PARTIES

5. Plaintiff Carl Leeper is a citizen of the state of Illinois residing in Franklin County, Illinois.

6. Defendant Alliance Resource Partners, L.P. ("Alliance Resource") is a Delaware master limited partnership with its principal place of business at 1717 South Boulder Avenue, Tulsa, Oklahoma 74119.

7. Defendant Hamilton County Coal, LLC, f/k/a Alliance WOR Processing, LLC ("Hamilton Coal"), is a Delaware limited liability company with its principal place of business at 1717 South Boulder Avenue, Tulsa, Oklahoma 74119. The managing member of Hamilton Coal is Joseph W. Craft III, the President and CEO of Alliance Resource.

8. Defendant Doe Defendants 1-20 ("Doe Defendants") may include other related entities that are currently unknown to Plaintiffs who should be named in this litigation and may be discovered as discovery in this litigation progresses.

## JURISDICTION AND VENUE

9. This Court has federal-question subject matter jurisdiction pursuant to 29 U.S.C. § 2104(a)(5) and 28 U.S.C. § 1331.

10. This Court has general and specific jurisdiction over Defendants because Defendants have sufficient minimum contacts within the State of Illinois and within the Southern District of Illinois, as Defendants are actively engaged in the management and operation of coal mines in this State, including at the Hamilton County Coal Mine #1 in Hamilton County, Illinois and other active mines and locations in the State, and, further, because the material acts upon which the suit is based occurred within the Southern District of Illinois.

11. Venue is proper in the Southern District of Illinois pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims asserted herein occurred in this judicial district in Hamilton County, Illinois.

## FACTUAL ALLEGATIONS

12. Alliance Resource is a publicly traded company and is the second-largest coal producer in the eastern United States, selling 40.2 tons of coal in 2015.[1]

13. Alliance Resource, directly and through Defendants, its affiliates and subsidiaries, operates ten mining complexes in five states—Illinois, Indiana, Kentucky, Maryland, and West Virginia—and also operates a coal-loading terminal on the Ohio River at Mt. Vernon, Indiana.[2]

14. Hamilton Coal operates the Hamilton County Coal Mine #1, which is an underground mining complex located near the city of Dahlgren in Hamilton County, Illinois (the "Hamilton County Mine"), that produces high-sulfur coal.

15. Upon information and belief, Defendants operate as a single, integrated business, despite their multiple levels of corporate entities, and employed 100 or more full-time employees, or 100 or more employees who in the aggregate work at least 4,000 hours per week, exclusive of overtime.

---

[1] http://www.marketwatch.com/story/alliance-resource-partners-lp-reports-quarterly-and-annual-financial-and-operating-results-maintains-quarterly-cash-distribution-of-0675-per-unit-2016-01-26
[2] Id.

3

16. Additionally, upon information and belief, Defendants, even if considered individually, employed 100 or more full-time employees, or 100 or more employees who in the aggregate work at least 4,000 hours per week, exclusive of overtime.

17. Upon information and belief, Alliance Resource maintained direct responsibility for all Defendants' strategic, financial, human resources, and benefits decisions and functions, and exercised control over all Defendants' business plans and decisions, including the decision to terminate hundreds of employees at the Hamilton County Mine.

18. Prior to February 6, 2016, Plaintiff was a full-time employee of Defendants for three years, during which he had been promoted from general laborer to pumper to maintenance.

19. As of February 2016, Plaintiff earned regular compensation of approximately $91,000 per year and other substantial employee benefits including, *inter alia*, health insurance, a 401(k) plan, short-term disability insurance, long-term disability insurance, life insurance, accidental death and dismemberment insurance, accrued and unused vacation days, and monthly bonuses.

20. At all times relevant hereto, Plaintiff and Class Members were either full time employees of Defendants, or temporary employees other than part-time employees, and are to be counted in determining that the threshold requirements of the WARN Act are met.

21. On February 2, 2016, Plaintiff attended a safety meeting organized by Defendants at which Plaintiff and other Class Members were told that rumors of possible termination were untrue.

22. On the night of Thursday, February 4, 2016, Plaintiff reported to work at the Hamilton County Mine for the midnight shift. At that time, Plaintiff received notice that his shift was cancelled and that he should report to a mandatory meeting the next morning.

23. On the morning of Friday, February 5, 2016, Plaintiff, along with nearly 200 other full-time employees received written notice, for the first time, that their employment was being terminated effective February 6, 2016 (the "Termination Notice"). A copy of the Termination Notice is attached hereto as Exhibit 1.

24. The Termination Notice stated that it was a "Temporary Layoff Notice," however, the effect of the letter was the termination of Plaintiff and the Class Members' employment. For example, the Termination Notice:

- did not guarantee that Plaintiff and the Class Members would be rehired, but stated Plaintiff "*may* return to your *at-will employment*" on August 1, 2016;

- stated that, effective February 6, 2016, Plaintiff and the Class Members "will *not be employed* by Hamilton County Coal"; and

- explained that "[b]umping rights do not exist".

Exhibit 1, p. 1 (emphasis added).

25. The Termination Notice also included several pages of "Frequently Asked Questions," which repeatedly referred to February 6, 2016 as the "employment termination date" and explained that: (a) the employment status of Plaintiff and the Class Members was "treated as a termination of employment"; (b) money could be withheld from Plaintiff and the Class Members' "final pay"; (c) upon the employment termination date, health care coverage would cease, any FMLA wages and benefits being received would discontinue, and Plaintiff and the Class Members would lose their interest in the Health Care FSA, short-term disability insurance, long-term disability insurance, life insurance, additional life insurance, and accidental death and dismemberment insurance; and (d) accrued and unused vacation days would be paid in a lump sum:

5

1. **If I am temporarily laid off, what is my employment status?**

A temporary layoff is *treated as a termination of employment* for purposes of wages and benefits.

\* \* \* \*

3. **Do I have to repay the pay advance I received on August 14, 2015?**

Yes. If you elected to receive a pay advance, then, per your agreement, the amount of the advance will be withheld from you *final pay*.

4. **What happens to my health care coverage?**

Company-paid health care coverage, including medical, dental, vision and prescription drug, will end *as of your employment termination date*.

\* \* \* \*

9. **When can I enroll in Marketplace coverage?**

You have 60 days *from the time you terminate employment* to enroll in the Marketplace.

10. **Can I continue to submit eligible medical claims for reimbursement under my Health Care FSA?**

If you signed up to participate in the Health Care FSA and are making contributions through payroll deduction, your participation will end on the day *your employment is terminated*. However, you may continue to file claims for any eligible expenses incurred between January 1 – and *your termination date* . . . .

\* \* \* \*

19. **What happens to my participation in the disability benefit programs?**

Your coverage under the Alliance short-term disability long-term disability benefit program *ends on your termination of employment date*.

20. **If I am currently receiving short-term disability benefits, will I continue to receive them for the remainder of the 26-week period?**

No. Under the terms of the short-term disability program, payments cease *on termination of employment*.

21. **If I am currently receiving short-term disability benefits, can I still apply for long-term disability benefits after I have completed my 26-week short-term disability period?**

No. To be eligible for long-term disability benefits, you must meet all of the eligibility conditions *before you terminate employment*.

22. **Will I still have life insurance after my termination of employment date?**

Your Company-paid basic life insurance (2x base pay) *ends on your employment termination date*. . . . If you want to convert to an individual policy, you must contact MetLife *within 31 days of your employment termination date*.

23. **If I purchased additional life insurance or spouse or dependent life insurance, what happens?**

Any additional life insurance that you purchased ends on your *termination of employment date*.

24. **What happens to my AD&D benefit?**

Your participation in the Accidental Death and Dismemberment Benefits Program ends *on your termination from employment date*.

25. **Do I lose my accrued and unused vacation days?**

No. Your accrued and unused vacation days will be paid out to you in a lump sum.

\* \* \* \*

27. **I am currently on FMLA leave, will I continue to receive wages and benefits during the remainder of the FMLA period even though I have received notice that I am temporarily laid off.**

No. The Family Medical Leave Act requirements do not apply *after termination of employment*.

7

Exhibit 1, pp. 6-10 (emphasis added).

26. Additionally, at the meeting when Plaintiff and the Class Members received the Termination Notice, the general manager of the facility, Ezra French, told Plaintiff and the Class Members that: (a) they would have to submit applications and reapply for employment at the Hamilton County Mine; (b) they would have to interview for positions; and (c) upon reapplying, there was no guarantee of employment.

27. Upon information and belief, 193 full-time employees remained employed at the Hamilton County Mine after February 6, 2016.

28. Upon information and belief, Defendants knew that terminations were anticipated, but failed to provide employees and state and local authorities with advance notice as required under the WARN Act.

29. Plaintiff and Class Members received no severance.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(3), and 23(c)(4), and the WARN Act, 29, U.S.C. § 2104(a)(5), on behalf of himself and all others similarly situated, as representative of the following class (the "Class"):

> All former employees, excluding part-time employees, of Alliance Resource Partners, L.P., Hamilton County Coal, LLC, and/or Doe Defendants 1-20, who worked at the Hamilton County Coal Mine #1 who were terminated from their employment without cause on or about February 6, 2016 without receiving sixty (60) days written notice of a mass layoff before the date of their termination.[3]

---

[3] Plaintiff reserves the right to add, amend, modify, or further define the Class, add subclasses, and/or to move for certification of a class or classes, including subclasses, defined differently than set forth above depending on the facts or law as discovered in this action and as permitted by Rule 23.

31. Excluded from the Class are any Defendant, its parents, subsidiaries, affiliates, predecessors, successors, officers, directors, and the immediate family members of such persons. Also excluded are any trial judge who may preside over this action, court personnel and their family members and any juror assigned to this action.

32. Plaintiff Leeper is a member of the Class which he seeks to represent.

33. The members of the Class are ascertainable as the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description.

34. Upon information and belief, the Class consists of 197 members. Therefore, the Class is so numerous that joinder is impracticable.

35. Plaintiff's claims are typical of those in the Class and are based on the same legal and factual theories.

36. There are numerous questions of law and fact common to the Class, which include, but are not limited to the following:

    a. whether Plaintiff and the Class Members were employed by Defendants;

    b. whether Plaintiff and the Class Members suffered an "employment loss" as defined by the WARN Act;

    c. whether Plaintiff and Class Members are "affected employees" as defined by the WARN Act;

    d. whether the employee terminations by Defendants effective February 6, 2016, constitute a "termination" and/or "mass layoff" under the WARN Act;

  e. whether Defendants failed to provide the notice required by the WARN Act;

  f. whether Defendants can avail themselves of any defenses provided for in the WARN Act; and

  g. whether Plaintiff and the Class are entitled to damages permitted under the WARN Act, and, if so, in what amount.

37. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is ready, willing, and able to serve as class representatives. Furthermore, Plaintiff's counsel is experienced in handling class actions and competent to assert the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interest that might cause them not to vigorously pursue this action.

38. Certification of the Class under Federal Rule of Civil Procedure 23(b)(3) is appropriate in that Plaintiff and the Class seek monetary damages, common questions predominate over any individual questions, and a plaintiff class action is superior for the fair and efficient adjudication of this controversy. A plaintiff class action will cause an orderly and expeditious administration of the Class Members' claims and economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured. Moreover, the individual Class Members are unlikely to be aware of their rights and not in a position (either through experience or financially) to commence individual litigation against Defendants.

39. Alternatively, certification of the Class under Federal Rule of Civil Procedure 23(b)(1) or 23(c)(4) is appropriate in that this action involves issues affecting all Class Members and inconsistent or varying adjudications with respect to individual members of the Class would establish incompatible standards of conduct for the Defendants or adjudications with respect to

individual members of the Class as a practical matter would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

## COUNT I
## VIOLATION OF THE WARN ACT, 29 U.S.C. § 2101 *et seq.*

40. Plaintiffs incorporate by reference each and every allegation set forth above as if fully set forth herein.

41. Defendants are a business enterprise subject to the provisions of the WARN Act, 29 U.S.C. § 2101 *et s eq.*, as an "employer" because Defendants employ 100 or more employees, excluding part-time employees.

42. The WARN Act, 29 U.S.C. § 2102 establishes that "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order . . . to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee."

43. The terms "mass layoff" is also defined by the WARN Act:

The term "mass layoff" means a reduction in force which—

(A) is not the result of a plant closing; and

(B) results in an employment loss at the single site of employment during any 30-day period for—

(i)
    (I) at least 33 percent of the employees (excluding any part-time employees); and
    (II) at least 50 employees (excluding any part-time employees); or

(ii) at least 500 employees (excluding any part-time employees).

29 U.S.C. § 2101(a)(3).

11

44. Further, the term "affected employees" is defined by 29 U.S.C. §2101(a)(5) as "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer."

45. The terms "employment loss" is defined by 29 U.S.C. §2101(a)(6) as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period."

46. The termination of Plaintiff and the Class Members effective February 6, 2016, at the Hamilton County Mine constitute a "mass layoff" because, upon information and belief, 197 full-time employees out of 390 experienced an employment loss at the single site of employment during a 30-day period. Thus, over 50, and at least 33 percent of the employees (excluding part-time employees) experienced the employment loss.

47. Plaintiffs and Class members are "affected employees" because they experienced an "employment loss"—an employment termination, other than a discharge for cause, voluntary departure, or retirement—as a consequence of a mass layoff by their employer.

48. The mass layoff was ordered by Alliance Resource, Hamilton Coal, and/or Doe Defendants.

49. Pursuant to the WARN Act, Defendants should have given Plaintiffs and Class members 60-days' notice of the Hamilton County Mine mass layoff.

50. This notice was not provided, and Defendants willfully violated the WARN Act by failing to provide the required notice.

51.     According to Defendant Alliance Resources Vice President of Operations, the mass layoff was due to "*[p]rolonged* weak market conditions" and "overreaching" regulations.[4] These factors were reasonably foreseeable at the time WARN Act notice should have been given.

52.     No exception to the WARN Act is applicable here.

53.     Defendants did not act in good faith or with reasonable grounds for believing that their actions were not a violation of the WARN Act. Upon information and belief, Defendants could have given 60-days' notice, but chose not to in an attempt to avoid payment of 60-days' wages to Plaintiffs and Class members.

54.     Accordingly, pursuant to 29 U.S.C. § 2104(a)(7), Plaintiff and the Class Members are "aggrieved employees" because they are employees who have worked for the employer ordering the mass layoff and who, as a result of the failure by the employer to comply with section 2102 of this title, did not receive timely notice either directly or through his or her representative as required by section 2102 of this title. Plaintiff and the Class are thus authorized to bring this action against Defendants for their violation of the WARN Act pursuant to 29 U.S.C. § 2104(a)(1).

55.     Pursuant to 29 U.S.C. § 2104(a)(1)(A), Plaintiffs and Class members are entitled to back pay for each day of Defendants' violation at a rate of compensation not less than the higher of the average regular rate received by such employee during the last 3 years of the employee's employment or the final regular rate received by such employee.

56.     Additionally, pursuant to 29 U.S.C. § 2104(a)(1)(B), Plaintiffs and Class members are entitled to benefits under an employee benefit plan described in 29 U.S.C. §

---

[4] http://www.4-traders.com/ALLIANCE-RESOURCE-PARTNER-8423/news/Alliance-Resource-Partners-Mine-layoffs-announced-21819854/ (emphasis added).

1002(3), including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred, if applicable.

57. Defendants' liability shall be calculated for the period of the violation, up to a maximum of 60 work days.

58. Plaintiff has also been required to retain counsel in this matter to protect Plaintiff's rights and have incurred attorneys' fees and costs in this matter.

59. If any purported release was signed by Plaintiffs or Class members, such a release is invalid as it lacks consideration as Defendants paid no severance here.

60. Accordingly, Plaintiffs and Class members are affected employees, have suffered economic harm due to Defendants' actions, and are therefore entitled to 60-days' back pay and continued benefits, pre- and post-judgment interest, reasonable attorney's fees, the costs of this action, and any civil penalties this Court deems just and proper, all in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, pray for relief as follows:

    A.    an order from the Court certifying the Class identified herein as a class action pursuant to FED. R. CIV. P. 23(b) and (c) and appointing Plaintiffs as class representatives and appointing their counsel to represent the Class;

    B.    an order from the Court finding that Defendants have violated the WARN Act and therefore holding Defendants liable to Plaintiff and the Class;

C. an order from the Court awarding Plaintiff and Class Members unpaid wages, salary, commission, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits for 60 working days following the Plaintiff's and/or Class Members' termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1), in an amount to be proven at trial;

C. an order from the Court awarding Plaintiffs and Class members pre-judgment and post-judgment interest, as well as reasonable attorneys' and expert-witness fees and other costs as may be available under law; and

D. an order from the Court awarding any civil penalties and such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues stated herein, and all issues so triable.

Respectfully submitted,

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

By: /s/ Thomas P. Rosenfeld
Thomas P. Rosenfeld #06301406
Thomas J. Lech # 06256261
Kevin P. Green #06299905
2227 South State Route 157
Edwardsville, IL 62025
618-656-5150
tom@ghalaw.com
tlech@ghalaw.com
kevin@ghalaw.com

15

**CULLEY, FEIST, KUPPART & TAYLOR, L.L.C.**
Roman P. Kuppart # _____
Kreig B. Taylor #_____
3 South Main St.
Suite 2
Harrisburg, IL 62946
618-252-7422
rkuppart@msfeistlaw.com
ktaylor@msfeistlaw.com

*Attorneys for Plaintiff*